**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| **AGORA FINANCIAL, LLC and** | ) | |
| **THE TAIPAN GROUP, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | |
| **KENNETH MARSH,** | ) | **Plaintiffs Demand Jury Trial on** |
| **KENNETH MASEKA,** | ) | **All Issues Triable by Jury** |
| **NICOLE D'ESPOSITO and** | ) | |
| **GRYPHON HOLDINGS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**COMPLAINT**

1.      Plaintiffs Agora Financial, LLC and The Taipan Group, LLC are Maryland limited liability companies with their offices and facilities located in Maryland.  Plaintiffs are in the business of publishing financial newsletters in print and electronic media and own copyrights in both their newsletters and the marketing materials for their newsletters, including U.S. copyright registration numbers TX6419904, TX6419905, TX6409353, TX6409354, TX6409355, TX6409356 ("the works").

2.      Upon information and belief, Defendants Maseka, Marsh and D'Esposito are citizens of New York.  Plaintiff believes that Defendants Maseka and Marsh may be the same person.

3.      Defendant Gryphon Holdings, Inc. ("Gryphon") is a New York corporation.  It purports to have offices in New York, portraying itself as having a prestigious Wall Street address, and in Florida.  Upon information and belief, Defendant Marsh is owner of Gryphon.

1

Gryphon also uses the names of Gryphon Financial and "the Network." Gryphon purports to be in the business of publishing financial information but, in fact, much of the text of the financial information provided by Gryphon and much of the marketing materials used by Gryphon to sell its financial information are purloined by Gryphon from others, especially Plaintiffs.

4. All of the acts of Gryphon are performed by either the individual Defendants or others who are acting in concert with the individual Defendants. Specifically, Defendants and others entered into a conspiracy for the purpose of stealing marketing copy and financial newsletters from Plaintiffs and passing them off as Gryphon's, and Defendants engaged in overt acts to achieve the goals of their conspiracy.

5. This is an action for copyright infringement under 17 U.S.C. §§ 501, 502 and 504, as well as unfair competition. As such, this court has subject matter jurisdiction under 28 U.S.C. § 1338(a) and (b).

6. This court has *in personam* jurisdiction over defendants under Md. §§ 6-103(1), (3) and (4), in that Defendants regularly transact business in Maryland, and, acting purposefully, they contacted Plaintiffs in Maryland fraudulently for the purpose of obtaining the works which are the subject of this action and obtained and copied those works, causing injury to Plaintiffs in Maryland.

7. Venue is proper in this district and division in that a substantial number of the events and occurrences underlying Plaintiffs' claims occurred here.

8. Using a credit card, Marsh subscribed to at least 8 of Plaintiffs' publications. Once Marsh's subscriptions were accepted by Plaintiffs, Plaintiffs provided Marsh, in electronic form, with Plaintiffs' financial publications and marketing materials, all of which are

copyrighted works.  Defendants then had an opportunity to copy, and did in fact copy, the copyrighted works.

9.    Defendants took Plaintiffs' electronic marketing materials and made minor changes of names and identifiers and used the same text and reissued the works on the internet but with modified links which caused readers to subscribe to Gryphon, rather than to Plaintiffs' publications.

10.    Defendants similarly made minor changes of names and identifiers to Plaintiffs' newsletters and issued these works as their own, so that subscribers to the purloined marketing copy would also receive the purloined financial newsletters.

11.    In or about May, 2006, Plaintiffs first found out about aspects of Defendants' scheme when a subscriber to one of Plaintiffs' publications informed them he had gotten a complimentary subscription to Gryphon and realized that the copy was the same.

12.    Following this initial tip, Plaintiffs' cancelled Marsh's subscription.

13.    Unbeknownst to Plaintiffs, Defendants continued to implement their conspiracy by having D'Esposito subscribe to Plaintiffs' publications, thereby continuing to receive and copy Plaintiffs' copyrighted works.  Thereafter, Defendants did the same thing by subscribing under Maseka's name but using the same credit card as they had for Marsh's subscription.

14.    Plaintiffs have suffered damages in that Defendants have diverted subscribers from Plaintiffs.  In addition, because Plaintiffs' publications recommend trades of securities, Defendants' issuance of the same recommendations to others interfere with the market for the securities, thus causing damage to Plaintiffs' subscribers and, as a result, to Plaintiffs.

15.    Upon information and belief, Defendants have confused potential subscribers to pay them when such subscribers would have paid Plaintiffs.

16.    Upon information and belief, Defendants have gained substantial profits by infringing on Plaintiffs' copyrighted works.

17.    Plaintiffs will suffer irreparable harm and lack an adequate remedy at law unless granted preliminary or temporary, as well as permanent, injunctive relief.

## CLAIMS

I.    Copyright Infringement

18.    Defendants have willfully infringed on Plaintiffs' copyrighted works by copying them and distributing the copies in violation of 17 U.S.C. § 501.

19.    Defendants have caused Plaintiffs damage and have profited from infringing on the works.

II.    Unfair Competition

20.    Defendants have engaged in unfair competition in that they have purposely misled readers to pay for subscriptions to their service and are palming off Plaintiffs' products as their own.

III.    Punitive Damages

21.    Defendants have engaged in a purposeful and malicious scheme to deceive, steal and damage Plaintiffs' business, as a result of which Defendants are liable for punitive damages.

WHEREFORE, Plaintiffs request the following relief:

A.    A preliminary and permanent injunction.

B.    Plaintiffs' actual damages, including Defendants' profits, in an amount to be determined by the jury.

4

C.      An amount equal to Defendants' profits from their infringement and unfair competition.

D.      Statutory damages in an amount to be determined based on the proof, provided that Plaintiffs shall retain their election rights under 17 U.S.C. § 504(c) until final judgment.

E.      Punitive damages in an amount to be determined by the trier.

F.      Plaintiffs' reasonable attorneys fees and the costs of this action.

G.      A referral for criminal prosecution under 18 U.S.C. § 2319 in accordance with 17 U.S.C. § 506(a) based upon Defendants' willful infringement of Plaintiffs' copyrighted works for commercial advantage and private financial gain and including an order of forfeiture and destruction under 17 U.S.C. § 506(b).

Respectfully submitted,

_____
Michael E. Geltner, Esq. (MD Fed. Bar # 10675)
Geltner & Associates, P.C.
Number 10 E Street, S.E.
Washington, DC 20003
(202) 547-1136

_____
Matthew J. Turner, Esq. (MD. Fed. Bar # 22319)
General Counsel
Agora, Inc.
14 West Mount Vernon Place
Baltimore, MD 21201
(410) 783-8410

*Attorneys for Plaintiffs Agora Financial, LLC and The Taipan Group, LLC*